Kathleen G. SCUTELLA

v.

COUNTY OF ERIE and Erie County Employees Retirement Board

Appeal of: County of Erie

Kathleen G. Scutella, Individually and as Executrix of the Estate of Frank J. Scutella, deceased, Appellant

v.

County of Erie and Erie County Employees Retirement Board

Kathleen G. Scutella, Individually and as Executrix of the Estate of Frank J. Scutella, deceased

v.

County of Erie and Erie County Employees Retirement Board

Appeal of: Erie County Employees Retirement Board.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2007.

Decided Dec. 5, 2007.

John B. Enders, Erie, for designated appellant, Kathleen G. Scutella.

Matthew J. McLaughlin, Erie, for appellee, County of Erie.

Thomas S. Talarico, Erie, for appellee, Erie County Employees Retirement Board.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Before the Court are consolidated appeals from orders entered October 27, 2006, and January 10, 2007, by the Court of Common Pleas of Erie County (trial court) in a dispute over the amount of a retirement death benefit owed by the Erie County Employees' Retirement System to Kathleen J. Scutella (Scutella), the surviving spouse of Frank J. Scutella (Decedent). The October 27, 2006, order granted summary judgment in favor of Scutella and held that her death benefit included contributions made by the County while Decedent was employed as an assistant district attorney from 1976 to 1988. The January 10, 2007, order precluded Scutella from collecting the County's contributions during a second shorter period of employment that immediately preceded Decedent's death in 2000. In this case we consider (1) whether Scutella was entitled to the County's contributions from 1976 to 1988, in addition to Decedent's contributions for that period, solely because Decedent had more than 10 years of credited service to the County at the time of his death, and (2) whether Decedent was in "active service" to the County at the time of his death.

The Erie County Employees' Retirement System (Retirement System) is a

compulsory program administered by the Erie County Retirement Board. County employees are required to contribute a percentage of their salary through automatic payroll deductions. The Retirement System provides a retirement allowance to a member upon retirement or, if the member dies before reaching retirement age, an actuarially equivalent lump sum payable to the member's surviving beneficiary. The retirement allowance has two components: (1) a member-provided monthly benefit based on the member's contributions to the Retirement System, with accumulated interest, multiplied by an actuarial factor; and (2) a County-provided monthly benefit equal to 1.25 percent times the member's average annual compensation for his three highest years of service times the number of his years of service.

Decedent was employed by the County of Erie as an assistant district attorney from January 25, 1976, until October 12, 1988. As a member of the Retirement System, Decedent contributed 7 percent of his compensation through automatic payroll deductions, and his contributions were deposited in a member reserve account on which interest was credited during the course of his employment.[1]

Decedent resigned from his position in 1988 to enter private practice. At the time of his separation, Decedent did not withdraw the accumulated deductions, including interest, credited to his member reserve account. Rather, because he had completed more than 8 years of County service, Decedent elected to exercise his vesting rights. By doing so, Decedent left the accumulated deductions credited to his account in the Retirement System, thereby entitling Decedent to apply for a deferred

pension at age 60. Decedent received a statement from the Retirement System advising him that as of January 1, 1988, he was 100 percent vested in the County-provided benefit. Reproduced Record at 25a (R.R. ——).

Decedent remained in private practice until 1999, when he mounted an unsuccessful bid for an open judgeship on the Erie County Court of Common Pleas. Shortly thereafter, in January 2000, Bradley Foulk, with whom Decedent had been professionally acquainted for many years, was sworn in as District Attorney of Erie County. Foulk believed that Decedent's skills and experience could be valuable assets to his office and the two reached an oral understanding that Decedent would work on a part-time basis for a salary of $14,000 to $15,000 per year. Decedent was sworn in as an Assistant District Attorney on January 7, 2000.

Decedent was responsible for mentoring junior attorneys in the office; advising law enforcement officers on search and seizure issues; performing legal research; and advising Foulk on how to run the District Attorney's office. Decedent brought his own computer and some furniture to the office. He was authorized to have typing and other work done by one of the office secretaries and the receptionist would take his calls as needed. Decedent had use of the District Attorney's library and all other resources in the office and he had access to confidential information. Decedent's name appeared on the District Attorney's official letterhead.

Decedent worked as a part-time Assistant District Attorney beginning on January 7, 2000, even though the position had not been formally created or budgeted by

---

1. From January 1976 through December 31, 1978, Decedent's accumulated deductions earned interest at the rate of 4 percent. From January 1, 1979, to October 12, 1988, when Decedent resigned, his accumulated deductions earned interest at the rate of 5.5 percent.

Erie County Council. Decedent was aware that Foulk was having difficulties getting him on the payroll but nonetheless continued to perform services during the period in question.

Decedent died unexpectedly on March 14, 2000, at the age of 50. He was survived by his wife, Kathleen Scutella (Scutella). Because Erie County Council had never formally approved the part-time assistant district attorney position, Decedent was still not on the County's payroll and had received no remuneration. Scutella sought compensation for Decedent's services and reached a settlement with the District Attorney's Office on August 23, 2002. Pursuant to the agreement, Scutella accepted $2,500 in full and final settlement of her "claim for employment compensation due to the legal services provided by her late husband, Attorney Frank Scutella, in 2000." R.R. 28a. Foulk approved the $2,500 payment from the District Attorney's Drug Forfeiture Fund as opposed to the General Fund from which all Erie County employees are paid. The release was expressly "not intended to apply to or to resolve any pension-related issues." Id.

Scutella applied to the Erie County Retirement Board for payment to her, as Decedent's surviving beneficiary, the lump sum actuarial equivalent death benefit of Decedent's contributions plus the County's contributions. By letter dated May 3, 2002, a Board representative responded to Scutella as follows:

Unfortunately, [Decedent] passed away on March 14, 2000 at the age of 50. The Erie County Personnel Office has advised us that [Decedent] was not employed by Erie County at the time of his death.

Upon review of the information relative to [Decedent], and relevant provisions of the County Pension Law[,] Act 96 of August 31, 1971 and the Erie County

Employe's Retirement System Summary Plan Description dated February 1999, we determined that [Decedent's] beneficiary is entitled to receive the return of his employee contribution account with interest to the date of payment. We also determined that the vested County pension should be forfeited.

The amount of [Decedent's] employee contribution account with interest as of May 1, 2002 is $66,816.83.

R.R. 32a.

Scutella, through her attorney, delivered a check for $175 to the Retirement System on November 12, 2002. This amount would have represented Decedent's contribution of 7 percent of the $2,500 Scutella accepted as "employment compensation" pursuant to the settlement agreement. In a letter dated December 6, 2002, an attorney for the Board advised Scutella that the Board would be unable to pay the County contribution to Decedent's pension because he was not an employee of the County at the time of his death. The Board returned Scutella's check for $175 because non-employees are not permitted to participate in the Retirement System.

Scutella filed a complaint in equity against the County and the Retirement Board in her capacity as Decedent's surviving spouse. She later amended her complaint and sued in her individual capacity and as executrix of Decedent's estate. Scutella sought an accounting of the actuarial equivalent lump sum amounts of Decedent's member-provided benefit and County-provided benefit with respect to Decedent's initial period of employment from January 26, 1976, to October 12, 1988, and the subsequent period from January 7, 2000, to March 14, 2000. Relying upon the retirement plan's Summary Plan Description, Scutella advanced two theories as to why she was entitled to both the County's and Decedent's contributions:

Decedent was in "active service" to the County at the time of his death and, even if he was not, he had more than 10 years of credited service. The County and the Retirement Board contested Scutella's claim, maintaining that she was only entitled to the amount of Decedent's accumulated member contributions plus interest.

The parties filed cross motions for summary judgment. In support of her motion, Scutella offered the deposition testimony of Don Boetger, the Retirement System's actuary, who determined that as of March 14, 2000, the lump sum value of Decedent's County-provided benefit would be $32,922.34 for his service prior to 2000, and $642.72 for his service from January 7, 2000, to March 14, 2000.

The trial court viewed the Summary Plan Description as a contract between Decedent and the Retirement Board. Specifically, the trial court focused on the following provision regarding death benefits:

14. *Death Benefits*

If you should die in active service after age 60 or after ten (10) years of credited service, a lump-sum death benefit will be paid to your designated beneficiary(ies). The benefit will include *both* your member and county money. The amount is determined by calculating what the pension would be if you had retired at the time of death; the present value of your pension is then paid in a lump-sum as the death benefit. Upon reaching age 60 or after completing ten (10) years of service, you may file with the retirement board choosing to have the death benefit paid as a monthly lifetime pension to your beneficiary rather than a lump sum. The monthly pension is determined by calculating what the pension would have been if you had retired at the time of death and selected an Option Two pension.

R.R. 161a (emphasis original). The trial court determined that this provision, specifically the first sentence, was susceptible to different interpretations regarding eligibility for both "member and county money." The court construed the ambiguity against the Retirement Board, as the drafter, and accepted Scutella's theory that because Decedent had accrued more than 10 years of active service to the County, his estate was entitled to both his member contributions and the County's contributions to his retirement account. The trial court decided it was not necessary to resolve the issue of whether Decedent was in "active service" at the time of his death.

Accordingly, by order dated October 27, 2006, the trial court granted Scutella's motion for summary judgment and denied the motions for summary judgment filed by the County and Retirement Board. As a result of the trial court's order, Scutella was entitled to Decedent's contributions and the lump sum value of the County-provided benefits that had accrued during Decedent's first period of employment, or $32,922.34.

Scutella filed a motion for reconsideration requesting that the trial court determine whether Decedent was in fact in "active service" to the County from January 7, 2000, to March 14, 2000. Scutella averred that the trial court's order only settled the issue of Decedent's County-owned benefits for the first period of employment, which had a lump sum value of $32,922.34 as of the date of his death. If Decedent had been in "active service" to the County from January 7, 2000, to March 14, 2000, then he would be entitled to an additional $642.72. Scutella also sought statutory pre-judgment and post-judgment interest on the total lump sum value of the County-provided benefits for both periods of employment. In response,

the County and Retirement Board reiterated their opposition to any finding that Decedent was in "active service" when he died on March 14, 2000.

The trial court granted reconsideration and issued an order on January 10, 2007, holding that Decedent was not in "active service" from January 7, 2000, to March 14, 2000. Therefore, he was not entitled to an additional $642.72 in County-provided benefits. The trial court reasoned that Decedent could not have been in "active service" because Erie County Council had never authorized a position for him in the budget.

Presently before this Court are: (1) Scutella's appeal from the trial court's January 10, 2007, order on reconsideration. Scutella contends the trial court erred in finding that Decedent was not in "active service" from January 7, 2000, to March 14, 2000. She seeks the lump sum value of County-provided benefits for that period, or $642.72; (2) the Retirement Board's appeal from the trial court's October 27, 2006, order granting Scutella's motion for summary judgment. The Retirement Board argues that the trial court erred in holding that Section 14 of the Summary Plan Description was ambiguous, and that Section 14 simply restates the statutory definition of "vesting" in the County Pension Law, Act of August 31, 1971, P.L. 398, *as amended,* 16 P.S. §§ 11651–11682.[2] We address the appeals in reverse order.

### Retirement Board's Appeal (188 C.D.2007)[3]

The Retirement Board contends that the trial court erred in granting summary judgment to Scutella and awarding her Decedent's County-provided benefit for the period of his employment from January 25, 1976, to October 12, 1988. The Retirement Board argues that Section 14 of the Summary Plan Description was not susceptible to different interpretations and, in any event, that document is not a contract but simply a codification of the County Pension Law.

We begin with the operative provision in the Summary Plan Description. Section 14 provides, in pertinent part:

> If you should die in active service after age 60 or after ten (10) years of credited service, a lump-sum death benefit will be paid to your designated beneficiary(ies). The benefit will include *both* your member and county money.

R.R. 161a (emphasis original).

According to Scutella, the death beneficiary of any employee who has completed 10 years of credited service qualifies for the maximum death benefit, regardless of whether the employee died in active service, because the "die in active service" requirement applies only to those employees aged 60 years or older. Scutella's interpretation essentially requires the placement of a comma after the phrase "after age 60" where there is none.

---

**2.** An appeal by the County has also been docketed at 175 C.D.2007. The County's brief to this Court, however, is responsive in nature and contains only arguments against Scutella's claim that Decedent was in "active service" when he died.

**3.** Our scope of review is plenary over an order granting summary judgment. *Limbach Company, LLC v. City of Philadelphia,* 905 A.2d 567, 572 (Pa.Cmwlth.2006). The trial court will be reversed where it has erred as a matter of law. Id. Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Id. (citing PA. R.C.P. No. 1035.2).

The Retirement Board offers a different interpretation: the "die in active service" requirement applies to employees aged 60 years or older *and* those who have 10 years of credited service. This construction also requires the placement of a comma where there is none, in this case after the word "service." Under the Board's interpretation, a death beneficiary may collect the County-provided benefit if the member dies in active service after age 60 or if the member dies in active service at any age so long as he has 10 years of credited service. In other words, simply banking 10 years of credited service is not enough.

The parties have each offered plausible but very different interpretations of the first sentence of Section 14 of the Summary Plan Description. Thus, we are constrained to agree with the trial court that the provision is ambiguous. We disagree, however, with the trial court's resolution of the ambiguity in favor of Scutella. When Section 14 is read in context with the relevant enabling statute, the County Pension Law, and Section 15 of the Summary Plan Description, it is clear that Section 14 applies only to members who "die in active service" with the County.

We begin with Section 2(16) of the County Pension Law, which defines "vesting" as

> the right of a contributor who separates from service after having completed eight or more years of credited service to leave accumulated deductions credited to his account in the fund and upon reaching superannuation retirement age receive a superannuation retirement allowance.

16 P.S. § 11652(16).[4] A "superannuation retirement allowance" means "the county annuity plus the member's annuity," payable upon reaching "superannuation retirement age." Section 2(15) of the County Pension Law, 16 P.S. § 11652(15). Thus, in order for a member like Decedent, who quits County service after vesting, to receive a pension consisting of both the County's and the member's contributions, he must leave his accumulated deductions in his account *and* reach "superannuation retirement age," which is age 60 in the Erie County Retirement System.

Consistent with the County Pension Law, Section 15 of the Summary Plan Description provides as follows:

> If you leave the county's employment for any reason after having completed eight (8) years of county service, you are considered to be one hundred percent (100%) vested. You have the right to receive a deferred normal pension, called a "vested pension" upon reaching superannuation retirement age. *However, payment of a "vested pension" is contingent upon surviving to superannuation age and upon leaving your accumulated deductions on deposit in your individual member account.* The accumulated deductions will continue to earn regular interest during the vesting period. If you choose to withdraw your accumulated deductions, you will forfeit your "vested pension."

R.R. 161a (emphasis added). More importantly, Section 15 explains what happens if a vested member dies before he is eligible for a vested pension:

> If, after vesting, you die before being eligible for a deferred pension, the full amount of your accumulated deductions including interest to the date of death

---

4. The minimum service required for vesting was lowered from 8 to 5 years after Decedent died. Act of December 16, 2003, P.L. 236.

will be paid to your estate or to your designated beneficiary.

*Id.* In that situation, the estate or beneficiary is entitled to only the member's accumulated deductions, which are defined as "total member contributions and/or 'pickup contributions' plus interest." Section 10 of the Summary Plan Description; R.R. 159a.[5] The payout to the beneficiary does not include county contributions, which are forfeited.

■ What we glean from the foregoing is that the contributions made by a member into his retirement account will always be returned to the member, whether in the form of a retirement allowance or a death benefit to the member's estate or beneficiary. Distribution of the County's contributions is not, however, a *fait accompli.* The County Pension Law guarantees such a distribution only to those vested members who reach superannuation age, or in this case age 60. The Law does not provide for distribution of the County's contributions to any other class of members, including those, like Decedent, who have not met the age requirement. The Summary Plan Description in this case does not contradict but, rather, complements these goals. Section 15 guarantees the return of accumulated deductions to the member's estate, and Section 14 limits distribution of the County's contributions to only those beneficiaries whose Decedent died in active service.[6]

In sum, Decedent quit County employment on October 12, 1988, and elected to leave his accumulated deductions on deposit in his member account. Because Decedent had completed more than 8 years of County service, he was considered 100 percent vested under Section 15. As such, he had the right to receive a full vested pension upon reaching superannuation retirement age, which in Decedent's case would have been age 60. Unfortunately, Decedent died before reaching age 60 and before he was eligible for a vested pension. As a result, the County's contribution to Decedent's member account was forfeited under Section 14 of the Summary Plan Description. The Retirement Board, not Scutella, was entitled to judgment as a matter of law on that issue.

We turn, next, to Scutella's appeal, and the issue of whether Decedent was in "active service" at the time of his death on March 14, 2000.

### Scutella's Appeal (187 C.D.2007)

Scutella challenges the trial court's holding on reconsideration that Decedent was not in "active service" to the County from January 7, 2000, to March 14, 2000. Scutella argues that the terms of her settlement agreement with the District Attorney's office constitute an admission that Decedent was an employee at the time of his death.[7] As a result, Scutella asserts that she is entitled to the $642.72 in Coun-

---

5. "Pickup contributions" are discretionary contributions made by a County employer on behalf of active members for current service. *See* Section 7(c) of the County Pension Law, 16 P.S. § 11657(c).

6. Similarly, under Section 10 of the Summary Plan Description, a member who leaves county service before vesting may only receive a refund of his accumulated deductions.

7. Scutella argues that the County and Retirement Board admitted her allegation that De-

cedent was an employee of the County from January 7, 2000, to March 14, 2000, because the defendants' answers contain only general denials of this allegation. In support, Scutella cites PA. R.C.P. No. 1029 (Denials. Effect of Failure to Deny). The County is correct that the allegation that Decedent was an employee during the relevant time period constitutes a conclusion of law to which no response was even required.

ty-provided benefits attributable to this period.[8]

■ In considering this issue, we note that the term "active service" is not defined in the Summary Plan Description. The parties agree, however, that it means an "employee" of the County and not an independent contractor. Based on that distinction, we agree with the trial court that Decedent was not in "active service" at the time of his death.

The record demonstrates that when District Attorney Foulk offered Decedent a job as a part-time Assistant District Attorney, such a position did not exist. Foulk stated during his deposition that he and Decedent had an oral understanding that Decedent would be hired as an Assistant District Attorney "as soon as it was approved by personnel and ultimately by County Council." R.R. 205a. Foulk testified that he informed Decedent there was not a position available until such approval was obtained. That never occurred. Notwithstanding that Decedent was sworn in to carry out the responsibilities of the District Attorney's office, the fact remains that there was no authorized position for him in the budget, and, therefore, he could not have been an employee in the "active service" of the County at the time of his death.[9]

We are also not persuaded by Scutella's argument that her settlement agreement with the District Attorney's office, which settled her "claim for employment compensation due to the legal services provided by her late husband," constituted an admission that Decedent was an employee at the time of his death. R.R. 28a. Scutella's position is belied by the very terms of the settlement agreement, which expressly stated that "this release is not intended to apply to or to resolve any pension-related issues." *Id.* The agreement is simply not relevant to the issue before the Court.

For the foregoing reasons, we hold that Decedent was not in active service to the County at the time of his death. We therefore affirm the trial court's order dated January 10, 2007. Further, we hold that Scutella is entitled to only the contributions made by Decedent to his retirement account from January 25, 1976, to October 12, 1988; she is not entitled to the County's contributions during that time

8. Although Scutella does not directly raise the issue, the necessary implication of her claim that Decedent was "in active service" when he died is that Scutella would be entitled under Section 14 of the Summary Plan Description to the County-provided contributions attributable to Decedent's employment from January 25, 1976 to October 12, 1988. This corollary of Scutella's position has even greater significance given our rejection of her claim that she was entitled to those County contributions based solely on Decedent's 10 years of credited service.

9. Scutella cites Erie County's Home Rule Charter and Administrative Code in support of her contention that Foulk had actual authority to hire Decedent as an Assistant District Attorney. These enactments actually support the County's position on this issue. Pursuant to the Home Rule Charter, all elected officials in Erie County have the authority to hire employees within their jurisdiction, "provided, however, that such employes shall be hired only from applicants certified by the Director of Personnel as having the necessary qualifications for the position to be filled." R.R. 238a. Here, Foulk testified that the personnel office repeatedly rejected Decedent's paperwork because no part-time Assistant District Attorney position existed. R.R. 304a. The Erie County Administrative Code contains a similar limitation on the District Attorney's otherwise broad authority to appoint assistants: their "number and compensation shall be in accordance with budget limitations." R.R. 240a. Again, there was no line item in the budget for a part-time Assistant District Attorney during the relevant time period.

period. We therefore reverse the trial court's order dated October 27, 2006.

### ORDER

AND NOW, this 5th day of December, 2007, the order of the Court of Common Pleas of Erie County in the above-captioned matter dated October 27, 2006, is hereby REVERSED. The order of the court dated January 10, 2007, is hereby AFFIRMED.