## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen S. Snook                :
                                 :
           v.                :
                                 :
Mifflin County               :
Retirement Board,        :    No. 173 C.D. 2015
               Appellant    :    Argued: November 17, 2015

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: December 15, 2015

The Mifflin County (County) Retirement Board (Board) appeals from the Mifflin County Common Pleas Court's (trial court) January 25, 2015 order granting Stephen S. Snook's (Snook) summary judgment motion (Snook's Motion) and denying the Board's summary judgment motion (Board's Motion). The sole issue before this Court is whether the trial court erred as a matter of law or abused its discretion in granting summary judgment in Snook's favor and against the Board. After review, we reverse.

Section 16(b) of the County Pension Law (Law)[1] provides that "[a]ny contributor who has completed twenty years of total service and who has reached the superannuation retirement age shall be entitled to the superannuation retirement allowance provided in [S]ection 14 [of the Law].[2]" 16 P.S. § 11666(b). Section

---

[1] Act of August 31, 1971, P.L. 398, *as amended*, 16 P.S. §§ 11651 – 11682.
[2] Section 14(b) of the Law provides:

2(10) of the Law states that, for contributors who have completed 20 years of service, the superannuation retirement age is 55 years or older. 16 P.S. § 11652(10).

Snook began working as the County's Assistant District Attorney (ADA) in January or February of 1992. Thereafter, he served as County District Attorney (DA) until December 31, 2011.[3] In January 2012, based upon his age (56 years) and 20 years of service, Snook sought superannuated retirement benefits from the Board. Snook's benefits request stated:

> I have become aware that some records maintained by the Employees' Retirement System indicate that my 'Date of Participation' in the system is February 3, 1992. That date is in error. Pursuant to Section 28 of [T]he [Mifflin] County [Employees'] Retirement [System and Trust, [a]mended and [r]estated [e]ffective January 1, 2011] [(]Plan[) (relating to correction of errors)], I am requesting that the error be corrected and that my benefits be calculated using the actual date I became a County employee, January 2, 1992. I was appointed [ADA] on that date and began working for the County on that date. My first appearance in Court as an [ADA] was on January 6, 1992.

Reproduced Record (R.R.) at 37a. By February 3, 2012 letter, the Board denied Snook's request because it "determined that there is no error in [his] start date of

---

> On retirement for superannuation, a retiree shall receive a retirement allowance which shall consist of: (i) a member's annuity which shall be the actuarial equivalent of his accumulated deductions standing to his credits in the members' annuity reserve account, and (ii) a county annuity equal to one-one hundred twentieth of his final salary multiplied by each year of total service . . . . At any time the [B]oard by rule may, by increasing the county annuity, authorize the payment of a minimum retirement allowance of one hundred dollars ($100) per month to every beneficiary who shall thereby retire for superannuation after twenty years [of] service.

16 P.S. § 11664(b).

[3] Snook lost his re-election bid in 2011.

2

February 3, 1992." R.R. at 39a. Thus, the Board denied Snook superannuated retirement benefits because he had only 19 years and 11 months of County service.[4]

On November 20, 2012, Snook filed a Complaint against the Board. In Count I (Mandamus) of Snook's Complaint, he sought to have the Board's records corrected to reflect that he was appointed and began serving as ADA on January 2, 1992. Alternatively, Complaint Count II (Declaratory Judgment) asked the trial court to declare that he had the necessary 20 service years. Complaint Count III (Injunction) requested an injunction directing the Board to pay Snook based upon the uncontested 19 years and 11 months of service until the issue of the remaining month was resolved. The Board filed an answer and new matter denying Snook's claims, including that his employment began on January 2, 1992. Snook denied the Board's new matter. The parties completed discovery.[5]

The Board's Motion was filed with the trial court on December 15, 2014. Snook's Motion was filed with the trial court on December 23, 2014. On January 28, 2015, the trial court granted Snook's Motion and denied the Board's Motion. The Board appealed to this Court.[6]

> Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

---

[4] In an attempt to meet the superannuation requirements, Snook requested a County job for 30 days. Although he was willing to perform a probation and parole job under a grant, "the commissioners didn't approve it, and it didn't go any further than that." R.R. at 118a; *see also* R.R. at 120a-121a.

[5] On October 11, 2013, the Board filed a motion for judgment on the pleadings which the trial court denied on February 24, 2014.

[6] "Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion." *Mandakis v. Borough of Matamoras*, 74 A.3d 301, 302 n.4 (Pa. Cmwlth. 2013).

*Scutella v. Cnty. of Erie*, 938 A.2d 521, 526 n.3 (Pa. Cmwlth. 2007) (citation omitted). Because the parties agree that there are no disputed material facts, this case turns upon whether Snook was entitled to judgment in his favor as a matter of law.[7]

Section 2 of the Plan in effect when Snook retired defined "[y]ear of service," in relevant part, as "a 12-month period **beginning on the first day of employment of a county employee** . . . during which such employee is credited with 1[,]000 or more hours of service[.]" R.R. at 50a (emphasis added). Section 2(2) of the Law defines "[**c**]**ounty employe**[**e**]," in pertinent part, as

> **any person**, whether elected or **appointed**, who is employed by the county, . . . **and paid by** such official from money appropriated by **the county for such purpose**, **whose salary or compensation is paid in regular periodic installments** or from fees collected by his office, but shall not, except as hereafter provided, include any person employed after the effective date of [the Law] on a part-time basis.

16 P.S. § 11652(2)[8] (emphasis added); *see also* Plan Section 2 (Definitions), R.R. at 48a. Thus, the issue in the instant case becomes whether, as a matter of law, Snook was a "County employee", as that term is defined, in January 1992. The crux of Snook's argument is that he had employee status in January 1992 because he performed ADA activities during that month, therefore, he is entitled to an extra month of retirement plan membership. However, the Law defines "[c]ounty

---

[7] Because this case involves "a question of law, our standard of review is de novo; thus, we need not defer to the findings of the [trial court]. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary." *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005).

[8] The Salary Board confirmed that the ADA position was part-time. *See* R.R. at 32a. Section 2.1 of the Law defines part-time as anything less than 1,000 hours per year. 16 P.S. § 11652(2.1). According to the record, in the case of the DA and ADA, part-time meant that the DA and ADA could simultaneously conduct private practice, not that they worked fewer than 1,000 per year. *See* R.R. at 161a, 164a. There is no dispute in this case that Snook was a County employee at least as of February 3, 1992.

4

employe" as one who is "employed by the county" **and** "paid in regular periodic installments." 16 P.S. § 11652(2).

The record reveals that during the summer of 1991, when Timothy S. Searer, Esquire (Searer) was running for re-election as the County's DA for the term commencing January 1, 1992, he and Snook discussed the possibility of Snook filling the then-empty ADA position if Searer was re-elected.[9] Snook agreed and, in anticipation of becoming ADA, he and his law partner stopped taking criminal defense cases in their private practice. Searer also joined Snook's practice.[10] According to a September 1991 news article, admitted into evidence without objection, although Searer had asked the County commissioners "to give the [vacant ADA] job to Snook for the remainder of the year," the request was not granted. R.R at 128a-129a.

Searer won re-election in November 1991. The County Salary Board's December 24, 1991 meeting minutes reflect that Searer made a motion to set the ADA's annual salary at $16,000.00, which was not seconded. However, a motion for an $11,000.00 annual salary was passed (4-1; Searer voted against it). *See* R.R. at 26a, 28a. A December 26, 1991 news article discussed Searer's fight for an ADA, and indicates that Searer "was not sure if Snook would want the part-time position at $11,000[.00]." R.R. at 131a.

According to the Salary Board's January 6, 1992 meeting minutes, Searer again expressed that $11,000.00 was an insufficient ADA annual salary. According to the January 23, 1992 meeting minutes, the Salary Board unanimously passed a motion "to pay the [ADA] an annual salary of $13,500[.00] with the position

---

[9] Searer's previous ADA appointee resigned on April 27, 1990.

[10] Snook recounted that when the DA's office was moved to his firm with Searer in 1991, Searer's DA responsibilities were conducted from there, and he believed that the County commissioners paid a fee to the firm for use of its space and a secretary assigned to conduct DA-related work. *See* R.R. at 116a.

5

to start March 1, 1992." R.R. at 32a. When the Salary Board reconvened on January 28, 1992, one of the members explained Searer's position:

> [Searer] can live with $13,500[.00] for this year if the [ADA] could start February 1st. If it's prorated from March 1st then they will have to do away with the f[r]ivolous duties. [] Searer felt that starting March 1st would not be much help. Starting February 1st would be much more helpful because of pending cases.

R.R. at 34a. The motion for the $13,500.00 annual salary with the February 1, 1992 start date was unanimously approved. *See* R.R. at 34a.

At Snook's July 29, 2014 deposition, he testified that he had decided several months before January 1992 that he would take the ADA position notwithstanding the pay. He asserted that at a December 1991 meeting at his law office, newly-elected commissioners and Salary Board members Murray Laite (Laite) and James Beckwith (Beckwith) discussed that Snook would be the ADA, but that his salary was still a question.[11] Snook claimed that he began working on cases in January 1992. Snook specifically recalled attending a general criminal court call and assisting Searer on January 6, 1992, but acknowledged that Searer signed all of the documents related thereto. *See* R.R. at 106a, 110a-111a, 125a. He also stated, and his February 7, 1992 calendar entry reflected, that he was scheduled to attend the Greg Marker (Marker) trial on that date. Snook contended that in anticipation of the trial, he would have reviewed the file and met with witnesses before February, although that work is not revealed in his January 1992 calendar. *See* R.R. at 106a, 111a-113a, 137a. The trial court's February 7, 1992 order regarding Marker's guilty plea was copied to "Snook, [ADA]." R.R. at 136a.

---

[11] Laite and Beckwith had been elected, but the meeting with Snook took place before they took office.

Snook clarified that because Searer felt the ADA salary was not fair, Searer continued to seek an increase. Snook concluded: "[I]t didn't matter to me. I was working already." R.R. at 107a; *see also* R.R. at 106a. In regard to the January 28, 1992 reference in the Salary Board's minutes concerning the ADA's February 1, 1992 "start" date, Snook claimed that since he told Laite and Beckwith at the December 1991 meeting that he was "starting to work . . . they both know I worked," the Salary Board knew that he was working in January 1992. R.R. at 109a. Snook maintained that he took the position once the Salary Board approved the ADA's $11,000.00 salary, "all the [D]istrict [A]ttorney had to do is say, 'Go to work.'"[12] R.R. at 122a. Snook testified:

> What I think they're discussing [as the January 1992 Salary Board meeting] is when they'll begin to pay me. . . . Because I was already -- I started -- . . . I started in January, the 6th. To me, what they're discussing is, how much we're going to pay him for this year and when we're going to get him a check.

R.R. at 108a; *see also* R.R. at 118a-119a.

Snook acknowledged that although $11,000.00 was budgeted for his position, he did not receive a check in January 1992. He offered: "I [was] working. I just assumed that it didn't make much sense to pay me a check for something less than what they actually owed me. They . . . were going to decide on a salary and they were going to pay me whatever it was going to be." R.R. at 109a. Although Snook admitted that he does not know for sure, he assumed that he was ultimately paid for his January 1992 work.

However, according to County payroll records the Board offered at Snook's deposition, his "Start Date" was listed as "2/3/92," and his initial salary rate

_____

[12] Snook stated that there was no formal offer or acceptance of the ADA job. *See* R.R. at 124a-125a.

7

was "$13,500[.00]/519.23." *See* R.R. at 157a. Snook signed his new member retirement system contribution agreement and his Member Data and Designation of Beneficiary sheet on February 3, 1992. *See* R.R. at 201a-206a. The Board's proffered documents further reflect that Snook's Plan member contributions began on February 3, 1992. *See* R.R. at 158a. Snook pronounced that the annual County Employees Retirement System Pension Benefit Statements he received specified that his "Date of Participation" was February 3, 1992. *See* R.R. at 117a-118a, 145a-149a. Snook recalled questioning the date with the retirement clerk sometime in the 1990s and accepting the explanation that it may have been due to the County holding back two weeks of pay or because he did not participate in the Plan. *See* R.R. at 118a.

Searer testified during his deposition that when he and Snook established their partnership in 1991, the decision was made that if Searer was re-elected DA, Snook would become ADA. Searer does not specifically recall discussing Snook's appointment with the commissioners, but would have discussed the need for the ADA's salary to be included in the proposed 1992 budget. Searer does not remember attending the Salary Board meetings, but stated that since the ADA position already existed, and it was well-known that he intended to appoint Snook, the meetings would have been about setting the ADA's 1992 salary.

Searer recalled being in court on January 6, 1992, but did not specifically recall Snook appearing with him that day. *See* R.R. at 166a, 176a. When asked what responsibilities and/or assignments Searer would have given Snook in January 1992, Searer explained that he never specifically discussed Snook's ADA responsibilities:

> A [Searer] . . . Basically our understanding and arrangement was, he could do anything I could do as [ADA], and if he had any questions about it, he could walk down the hall to my office.

Q [Counsel] Did [] Snook have all of those responsibilities in January of 1992?

A He would have.

Q And did he perform those responsibilities as they needed to be done in January of 1992?

A Anything that required action by the [ADA] would have [been] done by [] Snook at that time.

Q And 'that time' being January of 1992[?] . . .

A Yes[.] . . .

R.R. at 171a-172a. Searer could not recollect specifically what actions Snook undertook in January 1992, but maintained that Snook "would have been becoming familiar with cases." R.R. at 166a. Searer claimed: "[A]t some point I believe [] Snook . . . would have been handling [the Marker] case. And that would have included the preparation for trial[.]" R.R. at 168a; *see also* R.R. at 176a. However, Searer articulated that he did not know of any reports or other documentation reflecting that Snook was documented as the County's ADA as of January 1992. *See* R.R. at 172a-173a, 183a-184a.

Searer explained that the "start" date referenced in the Salary Board's January 1992 minutes would have referred to when Snook's $13,500.00 annual pay would commence. *See* R.R. at 170a, 175a-176a. Searer admitted that he never expressly informed the Salary Board that Snook was working during January 1992, and could not articulate why he did not push the Salary Board to pay Snook in January 1992. *See* R.R. at 177a. Searer further contended that since it was no secret that Searer planned to run for judge, and Snook would eventually become DA in his absence, Snook was taking the ADA job regardless of the pay. *See* R.R. at 178a. Searer asserted that the Salary Board members would also have seen Snook working in their building in January 1992.

9

Deborah Smith, Searer's secretary from 1985 through February 1992, testified in her deposition that Snook assumed the ADA role in January 1992. She described:

> [Snook] and I worked on files. He gave me letters. If somebody – if the police or somebody called in wanting to speak to the [DA] and . . . if [] Searer wasn't available, I fielded the call to [] Snook. Basically, anything that I did for [Searer], as far as the [DA]'s office was concerned, I was doing for [Snook]. . . . He just assumed the role.

R.R. at 195a; *see also* R.R. at 199a. She stated that Searer gave Snook certain cases to work on, and that Marker was to be Snook's first trial. Smith did not remember whether she went to court on January 6, 1992 with Snook and/or Searer.

"Neither the trial court nor this Court is empowered to substitute judicial discretion for administrative discretion granted [the Board], absent bad faith, fraud, capricious action, or abuse of power." *McCarrell v. Cumberland Cnty. Emps. Ret. Bd.*, 547 A.2d 1293, 1297 (Pa. Cmwlth. 1988). Here, Section 4(b) of the Law provides, in pertinent part: "Each member of the [B]oard shall take an oath of office that he will diligently and honestly administer the affairs of the [B]oard, and that **he will not knowingly violate or permit to be violated any of the provisions of [the Law]**." 16 P.S. § 11654(b) (emphasis added). Sections 2(10) and 16(b) of the Law expressly require that Snook be at least 55 years of age and to have served for 20 years to receive superannuation retirement allowance.

Based upon the evidence recited herein and its analysis of the employer/employee relationship between Snook and the County at the beginning of 1992, the trial court deemed Snook the County's ADA effective in January 1992 and, thus, eligible for superannuated retirement benefits based upon 20 years of service. Snook argues that there is substantial evidence to support the trial court's determinations that Snook was a County employee in January 1992: the County

commissioners approved his appointment as ADA, the Salary Board funded the ADA position, and he performed work as an ADA in January 1992. However, there was no evidence that the County paid Snook compensation in regular periodic installments in January 1992 as clearly required by the definition of "county employee." Nor did Snook show that there was bad faith, fraud, capricious action, or abuse of power on the Board's part in this case. Moreover, even accepting as true all well-pled facts and reasonable inferences to be drawn therefrom, as we must, there is no legal basis under which the courts may order the Board to change Snook's retirement plan membership start date to January 1992 without a legal basis.

Notwithstanding Snook's argument and the trial court's ruling that "employment" in other contexts may not be determined solely by whether one is paid, the Law makes that a requirement in this case. Under Section 2 of the Plan, "[y]ear of service" is defined as "**beginning on the first day of employment of a [C]ounty employee** . . . [.]" R.R. at 50a (emphasis added). Pursuant to Section 2(2) of the Law, Snook was a "[**c**]**ounty employe**[**e**]" when he was appointed and was "**paid in regular periodic installments**." 16 P.S. § 11652(2) (emphasis added).

Holding that the definition of "county employee" in the Law "is not altogether helpful," the trial court looked beyond the definition in support of Snook's circumstances. Trial Ct. Op. at 4. However, the law is well-settled that

> [i]n discerning [legislative] intent, the court first resorts to the language of the statute itself. If the language of the statute **clearly and unambiguously** sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and **not look beyond the statutory language** to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) . . . . 'Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision.' *Oliver v. City of Pittsburgh,* . . . 11 A.3d 960, 965 ([Pa.] 2011) (citations omitted).

11

*Mohamed v. Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa. 2012) (emphasis added). Because the Law clearly defines county employee, we need not look beyond that definition to decide this case.

Like the Board, this Court is constrained by the statutory mandates of who is entitled to participate in the Plan, i.e., only county employees. In order to be a county employee, an individual must have been "paid in regular periodic installments." Snook was "paid in regular periodic installments," but not until after February 3, 1992. 16 P.S. § 11652(2). Snook's **payroll records** clearly designate that his **"Start Date" was February 3, 1992**, and that his **initial salary, paid in bi-weekly installments, commenced in February 1992**. R.R. at 157a (emphasis added). Snook **admits that** "**he only went officially onto the payroll at the beginning of February, 1992**[.]" Snook Br. at 41 (emphasis added). Snook further acknowledged that **he was not paid for January 1992**. *See* Snook Br. at 41 n.3. Finally, and most importantly, Snook does not dispute that he **signed his retirement paperwork on February 3, 1992, his Plan member contributions began on February 3, 1992, and his annual retirement statements have since reflected that his Date of Participation in the County's retirement system was February 3, 1992**.

Thus, even if we accept Snook's substantial evidence argument, there is nothing to allow this Court to eviscerate or in any manner change the definition of "county employee." When Snook applied for his retirement benefits in January 2012, all of the County's records reflected that his ADA employment, his pay and his County retirement system participation commenced in February 1992. Those facts were undisputed for 20 years. The evidence produced to the trial court demonstrated nothing more than Snook may have preliminarily prepared to officially begin his ADA duties in February 1992. Because there is no legal basis under which the courts

may credit Snook for January 1992 retirement plan membership, Snook's claims must fail.

> A writ of mandamus is an extraordinary remedy used to compel official performance of a ministerial act when a **petitioner establishes a clear legal right**, the respondent has a corresponding duty, and the petitioner has no other adequate remedy at law. The purpose of mandamus is to enforce rights that have been clearly established.

*Tindell v. Dep't of Corr.,* 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014) (citation omitted; emphasis added). "Mandamus is appropriate only to enforce established rights; it is not available to establish legal rights." *Buehl v. Beard*, 54 A.3d 412, 416 (Pa. Cmwlth. 2012), *aff'd,* 91 A.3d 100 (Pa. 2014). Where, as here, Snook failed to establish that he has a clear legal right to superannuated retirement benefits, he has failed to state a cause of action upon which mandamus relief may be granted.

Snook alternatively seeks a declaration from this Court that he had the necessary 20 service years. Section 7532 of the Declaratory Judgments Act, provides: "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. "A declaratory judgment is an appropriate remedy where a case presents antagonistic claims, indicating imminent and inevitable litigation." *Independence Blue Cross v. Pa. Ins. Dep't*, 802 A.2d 715, 719 (Pa. Cmwlth. 2002) (quoting *Am. Council of Life Ins. v. Foster*, 580 A.2d 448, 451 (Pa. Cmwlth. 1990)). It "is appropriate where such a determination will help resolve a genuine and justiciable controversy." *Mazin v. Bureau of Prof'l & Occupational Affairs*, 950 A.2d 382, 390 (Pa. Cmwlth. 2008). However, "[o]ur resolution of [Snook's] mandamus count resolves his count for declaratory relief." *Buehl*, 54 A.3d at 419. The Board's denial of Snook's claims for superannuated retirement benefits was in strict accordance with the Law. "Accordingly, we reject [Snook's] claim for

13

declaratory relief based on our analysis above, and grant judgment [in the Board's favor]." *Id.*

Lastly, in Complaint Count III, Snook seeks an injunction requiring the Board to begin paying him those retirement benefits to which he is entitled, retroactive to January 1, 2012.

> An injunction that commands the performance of an affirmative act, a 'mandatory injunction,' is the rarest form of injunctive relief and is often described as an extreme remedy. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim.

*Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012) (citations omitted). Each of the above requirements must be satisfied before a mandatory injunction will be ordered. *Big Bass Lake Cmty. Ass'n v. Warren*, 23 A.3d 619 (Pa. Cmwlth. 2011).

We acknowledge that Section 16(a) of the Law makes clear that if "an elected county officer complete[s] his term of office and discontinue[s] service after having completed eight years of total service . . . he shall be paid" his retirement contributions. 16 P.S. § 11666(a). We also agree that there would be no risk to the Board if the injunction is granted. However, Snook's Complaint failed to mention, let alone make a "very strong showing," that he will suffer injury without the injunction, or that irreparable harm not compensable by money damages will occur.[13]

---

[13] Although Snook did not specifically make such a claim, even if this Court could assume that the Board's failure to pay him the portion of his retirement to which he is entitled has caused him financial hardship that, together with Snook's claims that he was entitled to his contributions

14

*Wyland*, 52 A.3d at 582. Rather, Snook seeks only money damages. Moreover, Snook does not have a clear right to relief. Because Snook's Complaint fails to address each of the injunction requirements, he failed to state a cause of action upon which a mandatory injunction may be granted.

Based upon the foregoing, accepting as true all well-pled facts and reasonable inferences to be drawn therefrom, as we must, Snook was not entitled to judgment in his favor as a matter of law. *Mandakis v. Borough of Matamoras*, 74 A.3d 301 (Pa. Cmwlth. 2013). Rather, we hold that the Board was entitled to judgment in its favor as a matter of law. Accordingly, we reverse the trial court's order, and remand this matter to the trial court with the direction to grant the Board's Motion in accordance with this opinion.

_____
ANNE E. COVEY, Judge

---

and that the Board would not suffer any "risk of loss" if the injunction was granted, would still be insufficient to support a viable mandatory injunction claim. R.R. at 22a.

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen S. Snook : 
 : 
v. : 
 : 
Mifflin County : 
Retirement Board, : No. 173 C.D. 2015
               Appellant : 

## O R D E R

AND NOW, this 15th day of December, 2015, the Mifflin County Common Pleas Court's (trial court) January 25, 2015 order is reversed. This matter is remanded to the trial court with the direction to grant the Mifflin County Retirement Board's summary judgment motion in accordance with this opinion.

      Jurisdiction relinquished.


_____
ANNE E. COVEY, Judge